**SO ORDERED.**

**SIGNED this 22 day of February, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

JOHN AND PARTHENIA SUGGS,                CASE NUMBER: 10-04400-8-JRL
                                         CHAPTER 13
    DEBTORS.

### ORDER

This matter came before the court on the debtors' objection to confirmation of the chapter 13 plan. A hearing was held in Raleigh, North Carolina on January 12, 2011.

### BACKGROUND

The debtors filed for relief under chapter 13 of the Bankruptcy Code on June 1, 2010. On October 26, 2010, the chapter 13 trustee filed a motion for confirmation of the chapter 13 plan. As proposed, the plan pays allowed unsecured claims in full plus interest. Contrary to this court's decision in In re Smith, 09-06440-8-RDD (Bankr. E.D.N.C., Judge Randy D. Doub, April 15, 2010), the motion for confirmation includes interest in the plan at the Till rate.[1] The trustee objects to interest at the federal judgment rate, arguing that Till is appropriate. The debtor supports the result of Smith; however, if the court disagrees with the federal judgment

---

[1] Till v. SCS Corp., 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed. 2d 787 (2004).

rate, the debtor, in the alternative, proposes the applicable federal rate (AFR).

## DISCUSSION

Confirmation of a chapter 13 plan requires compliance with §1325(a). Pursuant to §1325(a)(4), unsecured creditors must receive value for property as if the property were liquidated under chapter 7. Value must be received as of the "effective date of the plan."[2] The hypothetical liquidation language contained within § 1325(a)(4) is determined under an analysis of § 726(a). When, as the case is here, hypothetical liquidation results in full satisfaction of allowed unsecured claims, interest must be paid. 11 U.S.C. §726(a)(5). Another way of stating this principle is if the hypothetical liquidation of a chapter 7 estate produces a dividend, then distribution under the chapter 13 plan must exceed the amount that unsecured creditors received through hypothetical liquidation. 2 Keith M. Lundin, Chapter 13 Bankruptcy §162.2 (3d ed. 2000 & supp. 2004). When interest is due, payment of such interest is made at the legal rate. 11 U.S.C. §726(a)(5).

The court sees no reason to forgo the well reasoned finding of Smith, that interest at the legal rate is satisfied by application of the federal judgment rate. Therefore, the federal judgment rate is appropriately applied under §726(a)(5); and, this controls from the petition to the effective date of a chapter 13 plan under §1325(a)(4). See In re Cook, 322 B.R. 336, 340 (Bankr. N.D. Ohio 2005)("Section 726(a)(5) deals with pendency interest – interest arising after the commencement of the case but before the effective date of the plan .") If a chapter 13 plan

---

[2] Section 1325(a)(4):
the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title . . . .

proposed a lump sum payment in full satisfaction of unsecured claims on the effective date, the plan would be confirmable without further consideration.  See In re Evans, 2010 WL 2976165 (Bankr. M.D.N.C. July 28, 2010). However, when a chapter 13 plan defers payments over time, interest must also compensate for the delay.

Known as present value interest, or the time value of money, the "concept of present value is based upon the recognition that a dollar in the hand today is worth more than a dollar due some time in the future." Evans, 2010 WL 2976165 at * 3.  The Supreme Court in Till examined the concept of present value, interpreting §1325(a)(5) to incorporate the national prime rate of interest plus a nominal risk factor of 1 to 3 percent.  Although the Till decision involves secured creditors, a recent trend among bankruptcy courts applies the same prime plus formula approach to unsecured creditors.  In re Hoskins, 405 B.R. 576 (Bankr. N.D. W. Va. 2009); In re Evans, 2010 WL 2976165 (Bankr. M.D.N.C. July 28, 2010); see also In re Jozil, slip copy, 2010 WL 5559697 (Bankr. M.D. Fla. October 1, 2010)(While under the facts of the case the debtors did not have sufficient nonexempt assets to pay unsecured creditors in full, the court stated in its conclusions of law that it was persuaded by the analysis of Evans.)  As noted in the Evans opinion, "the operative language of the two sections [§§1324(a)(4) and (5)] is practically identical."  Moreover, "Congress intended bankruptcy judges and trustees to follow essentially the same approach when choosing an appropriate interest rate under any of these provisions [requiring a present value determinaton]." Evans, 2010 WL 2976165 at *5 (citing Till, 541 U.S. at 474).  Collier's also defaults to the language of §1325(a)(5) when calculating present value under §1325(a)(4). 8 Collier on Bankruptcy ¶ 1325.05[2][b]("both sections share the goal of compensating creditors for a delay in payments they would otherwise receive immediately.")

Although the line of cases applying Till to §1325(a)(4) appears to be growing, there are those that decline to follow the formula approach.

A case that provides analysis for the decision to forego the Till approach is In re Cook, 322 B.R. 336 (Bankr. N.D. Ohio 2005). Cook, determining that the Till plurality was not binding, followed Sixth Circuit precedent of the coerced loan approach. Id, 322 B.R.at 345. The coerced loan approach sets interest rates at the level a creditor would receive were they to foreclose on collateral and reinvest proceeds into the current lending market. Id.; see also, United Carolina Bank v. Hall, 993 F. 2d 1126 (4th Cir. 1993)(Prior to Till, Fourth Circuit case law also recognized the coerced loan approach under §1325(a)(5) as the appropriate rate of interest). In addition to following circuit precedent, the court in Cook reasoned that unsecured creditors were protected because if the chapter 13 case failed, unsecured creditors had the ability to file suit and obtain judgment liens against unencumbered equity. 322 B.R. 336 at 346. Because facts that trigger §1325(a)(4) place unsecured creditors in a favorable position with little risk, Cook likened unsecured creditors of a solvent estate to an oversecured creditor making a short term loan. 322 B.R. 336 at 345.

Furthering the dispute about the appropriate rate of present value interest is In re Tittle, 346 B.R. 684 (Bankr. E.D.Va. 2006), which applied the federal judgment rate. Tittle denied confirmation of the solvent debtor's proposed chapter 13 plan unless the plan was modified to provide unsecured creditors interest at the federal judgment rate. 346 B.R. 684 at 693. The court gave no explanation of its rationale; and, therefore, Tittle is not instructive. Focusing instead on the case law of this district, although Smith did not distinguish between pre and post-confirmation interest, the court cannot automatically discount the finding that the federal

4

judgment rate compensates for present value. Pursuant to 28 U.S.C.A. §1961, interest at the federal judgment rate is calculated at a "rate equal to the weekly-average 1-year constant maturity Treasury yield . . . ." Treasury Bills, or T-Bills, are nothing more than short-term debt obligations. While conventional bonds pay interest at a fixed rate, it is the appreciation of the T-Bill over the par value that provides the holder with a return. The Board of Governors of the Federal Reserve System determines the discount yield weekly at auction, directly reflecting current market trends. No additional risk factors are considered because T-Bills are backed by the government and considered by investors to be risk-free. Therefore, this rate of interest mirrors the reality raised by Cook that unsecured creditors with the benefit of a solvent debtor are faced with minimal risk. Furthermore, interest at the federal judgment rate has a direct correlation to present market conditions through the T-Bills on which it is based.

      Objection to the federal judgment rate stems primarily from the fact that under the current economy the federal judgment rate is low, below 1%. Thus, it is a concern that interest at the federal judgment rate will not satisfy present value. However, historically speaking, the federal judgment rate has been well over 10%. Were the unsecured creditor to pursue its rights in federal court absent the bankruptcy, any judgment received would accrue interest at the federal judgment rate.

      After careful consideration, the court concludes that although sections 1325(a)(4) and (5) share the goal of compensating creditors for the lost value of time, Till fails to fully consider the reality of unsecured creditors to whom interest is due. While there is no collateral at issue to deflect risk factors for unsecured creditors generally, in the context of §1325(a)(4), unsecured creditors are essentially secured by the equity in the property. The only risk to an unsecured

5

creditor under §1325(a)(4) is failure of the plan; and, were this to occur, the unsecured creditor is free to obtain a judgment on the unencumbered equity.

The court declines to apply the applicable federal rate ("AFR") as suggested as an alternative by the debtor. AFR is the interest rate published by the U.S. Treasury to calculate imputed interest. When a loan is made, but no interest charged, the IRS imputes interest on the loan and taxes as though interest were being collected as income. The goal of imputed interest is to prevent wealthy individuals from avoiding taxes by loaning money to children in lower tax brackets who can invest the money in such a way that investment income is taxed at a lower rate. Assuming interest as taxable income serves a purpose entirely different from compensating investors or creditors for a delay in payment; and, therefore, is not an acceptable rate of present value interest.

Based on the foregoing, the objection to the motion for confirmation of the chapter 13 plan is **SUSTAINED**. The plan shall provide for interest payments to unsecured creditors pre and post-confirmation at the federal judgment rate pursuant to §1325(a)(4).

**END OF DOCUMENT**